**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

Counsel for Plaintiffs and Proposed Class

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID NGUYEN AND SCOTT SHEPPARD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>PLR WORLDWIDE SALES LIMITED,<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.;**<br><br>2. **VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, ET SEQ.;**<br><br>3. **VIOLATIONS OF THE CALIFORNIA CIVIL CODE § 1750, ET SEQ.;**<br><br>4. **VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT, WASH REV. CODE §§ 19.86.010,** *ET SEQ;* **AND**<br><br>5. **UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

---

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

1.     Plaintiffs, David Nguyen and Scott Sheppard, bring this action on their own behalf and all others similarly situated against against Defendant, PLR Worldwide Sales Limited ("Playrix" or "Defendant"), to secure redress for violations of the California Business and Professions Code §17200, *et seq.*, the California Civil Code § 1750, *et seq.*, and the Washington Consumer Protection Act §§19.86.010, *et seq.*

## NATURE OF THE ACTION

2.     Plaintiffs bring this action on behalf of themselves, the general public, and a proposed class of similarly situated consumers for the unlawful, deceptive, and misleading trade practices (dark patterns and addictive in-game features) engaged in by Defendant, a provider of some of the most popular video games in the world.

3.     One of Defendant's most popular games is Gardenscapes, which is considered one of the largest match-3 puzzle games in the market and touts a daily average of 30-40 million active players.[1]

4.     Gardenscapes is absurdly lucrative. As of January 2024, Gardenscapes had generated over $3 billion in player spending since its launch in 2017.[2] For perspective, in the fourth quarter of 2023 alone, Gardenscapes generated over $130 million from gross player spending.[3]

5.     These billions of dollars in revenue are generated by Defendant's deceptive use of "dark patterns" to push players into "microtransactions" – the ability, while in the game, to make discrete in-app purchases of in-game valuables necessary to advance gameplay and continue in the story.

---

[1] https://www.businessofapps.com/data/gardenscapes-statistics/ (last accessed October 10, 2024).
[2] https://www.businessofapps.com/data/gardenscapes-statistics/ (last accessed October 10, 2024).
[3] https://www.statista.com/statistics/1089408/gardenscapes-player-spending/#:~:text=In%20the%20fourth%20quarter%20of,app%20purchase%20(IAP)%20revenues. (last accessed October 10, 2024).

CLASS ACTION COMPLAINT

6.     While Gardenscapes is free to play, Defendant integrated microtransactions into the game which allow users to buy coins (the primary in-game currency) and in-game "boosts" with real world currency for faster progression. These in-app purchases generally range from $0.99 to $99.99. The nefarious and addicting quality of Gardenscapes comes in the way users are eased into the game with access to resources and easy levels.

7.     However, that sense of instant gratification is fleeting as users spend more and more time in the game. Defendant designed Gardenscapes such that the longer a user spends time playing the game, the greater the need for expensive upgrades and resources. As users go deeper into the game, the tasks and upgrades take longer and are more difficult to complete, making the purchase of in-game valuables a practical necessity to advance. This leads to users purchasing more and more coins and "boosts" with real currency to keep up with that rush of instant gratification they experienced when they first started the game.

8.     Capitalizing on the addictive behavior created by its dark pattern framework, Defendant deceives consumer by offering purported massive discounts on the price of its in-game goods. It uses false percentage reductions to trick consumer into believing they are benefitting from limited-time promotions or massive sales that substantially increase the value of their in-game purchases. These purported savings are false, however, because the original pricing that these ads and offers reference are completely fabricated.

9.     Despite presenting these ads and offers for years, at no point have these packages of in-game items ever actually been offered at a non-discounted price. In other words, Defendant rarely, if ever, sells these items at their "original" price. It offers false discounts from an original price that did not exist, and its players bought packages on "sale" that were the same prices they would ordinarily pay.

**CLASS ACTION COMPLAINT**

10.    Further, the advertised discount pricing is entirely arbitrary, is in no way correlated to any set value for these virtual in-game items that Defendant has established and does not reflect the prevailing market retail pricing over any reasonably substantial period of time for these virtual in-game items, whose pricing and value is entirely determined by Defendant at its own discretion.

11.    The Federal Trade Commission ("FTC") describes these kinds of false pricing schemes as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious –for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction –the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. §233.1(a).

12.    California statutory and regulatory law also expressly forbid such pricing schemes. Specifically, Cal. Bus. & Prof. Code § 167501 states:

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

13.    Defendant's unfair, deceptive, and unlawful acts or practices of falsely representing discounts on its in-app goods, have, through such omissions, deceived, misled, and harmed consumers who comprise a large segment of Defendant's player

population. Plaintiffs and other consumers, as well as the general public, have been impacted or injured as a result of Defendant's practices, including, but not limited to, having suffered out-of-pocket loss.

14.    Plaintiffs bring this class action lawsuit on behalf of themselves and all other similarly situated Gardenscapes players who were deceptively lured into making in-game purchases.

15.    Defendant knew, or reasonably should have known, that their use of dark patterns, including their fake "discount" price advertising, is false, deceptive, misleading and unlawful.

16.    Defendants have fraudulently concealed from and intentionally failed to disclose to Plaintiffs and the Class Members the truth about their advertised price discounts and their use of dark patterns.

17.    Through this false and deceptive marketing, advertising and pricing scheme, Playrix has violated California and Washington law prohibiting the advertisements of goods for sale as discounted from false former prices and prohibiting misleading statements about the existence and amount of price reductions.

18.    The claims and issues asserted herein are governed by California and Washington state law. The State of California has an immediate and substantial interest in policing corporate conduct occurring within the State.

19.    Plaintiffs, on behalf of themselves and the Classes, seek damages, restitution, declaratory, injunctive relief and all other relief which the Court may deem appropriate.

## JURISDICTION AND VENUE

20.    Jurisdiction is proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs alleges a class, which will result in at least one class member belonging

**CLASS ACTION COMPLAINT**

to a different state than that of Defendant. In the aggregate, Plaintiffs seek over $5,000,000.00 in damages for their in-game purchases which exceeds the $5,000,000.00 (five-million dollar) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present

21.     The Court has personal jurisdiction over Defendant and venue is proper in this District because, Plaintiff David Nguyen resides in this District, Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District and throughout the United States.

22.     Defendant further knowingly entered its mobile application into the stream of commerce in this District and the State of California, as evident by millions of downloads and purchases of its in-game valuables in California. Defendant used its mobile game to sell virtual items to countless users in this District and the State of California as part of an ongoing relationship, as Defendant's profits largely depend on users exhausting the virtual items they have purchased and then purchasing more items to continue to advance in Defendant's game. Defendant had express knowledge that these transactions and revenues emanated from users located in California.

23.     Additionally, the Court has personal jurisdiction over Defendant because, pursuant to Defendant's agreements with Apple to deliver its mobile applications through the App Store, Defendant appointed Apple and Apple Subsidiaries as its agent and commissionaire for "the marketing and delivery of the Licensed Applications to end-users" within the State of California and this District.[4] Apple is headquartered in California and conducts the heart of its business in California, including the delivery and marketing of Defendant's tortious mobile game applications, within the nexus of

---

[4] *See* https://developer.apple.com/support/terms/apple-developer-program-license-agreement/

**CLASS ACTION COMPLAINT**

the allegations asserted in this action. Defendant has benefitted from conducting millions of dollars' worth of transactions relating to the claims asserted herein in California and this District through Apple acting as Defendant's agent, such that Apple's forum-related presence and activities are imputed to Defendant.

24.    Similarly, pursuant to Defendant's agreements with Google to deliver its mobile applications through the Google Play Store, Defendant appointed Google as its agent for the marketing and delivery of its application to end-users within the State of California and this District.[5] Google is headquartered in California and conducts the heart of its business in California, including the delivery and marketing of Defendant's tortious mobile game applications, within the nexus of the allegations asserted in this action. Defendant has benefitted from conducting millions of dollars' worth of transactions relating to the claims asserted herein in California and this District through Google acting as Defendant's agent, such that Google's forum-related presence and activities are imputed to Defendant.

25.    Plaintiffs have standing to bring this action pursuant to the California Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL"); the California False Advertising Law, California Business and Professions Code § 17500, *et seq.* ("FAL"); California Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"); the Washington Consumer Protection Act, Wash Rev. Code §§ 19.86.010, *et seq.* and the common law.

## PARTIES

26.    Plaintiff David Nguyen is a natural person who, at all times relevant to this action, was a resident of Orange County, California.

27.    Plaintiff Scott Sheppard is a natural person who, at all times relevant to this action, was a resident of Clark County, Washington.

---

[5] *See* https://play.google/developer-distribution-agreement.html

**CLASS ACTION COMPLAINT**

28.     Defendant Playrix is a corporation organized under the laws of Ireland, with its principal place of business at 4th floor, Red Oak North, South County Business Park, Leopardstown, Dublin 18 D18 X5K7, Ireland. Playrix is a mobile video game development company whose video games include but are not limited to Gardenscapes. Defendant directs, markets, and provides its business activities throughout the United States, including throughout the states of California and Washington.

29.     Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## **COMMON FACTUAL ALLEGATIONS**

### **I.     Gardenscapes: A Highly Profitable "Freemium App"**

30.     Gardenscapes is a mobile application gamed developed and operated by Defendant and available on iPhone and Android devices throughout the United States via the Apple App Store and Google Play platforms.

31.     Gardenscapes is a massive online match-3 puzzle game with the main objective of restoring a dilapidated garden through completing puzzles, earning money (coins, the primary in-game currency) and searching for hidden objects.

32.     Coins are earned by players playing the game board and leveling up. Each time a player "wins" (for example, completing a match-3 puzzle game) they earn coins. Each game board in Gardenscapes is preset with how many coins a player can earn. The faster a player completes the game board, the fast that player can earn coins.

33.     Coins allow players to clear obstacles, renovate areas, purchase "boosts" for the match-3 levels and decorate their garden. As the players spends more and more coins, they can unlock more of the story and advance into further levels in the game.

34.     For years, Gardenscapes has consistently ranked among the most downloaded mobile game apps on the Apple and Android app stores. As of April of

2024, Gardenscapes has amassed approximately 633 million downloads worldwide, reaping billons in revenue dollars.

35.    Gardenscapes belongs to a category of apps known as "freemium" apps. A freemium app is one which users do not have to pay to have access to play a fully functional game – the game is free to download and start playing.

36.    The term freemium is a misnomer, as users are given multiple purchase opportunities, known as microtransactions or in-app purchases ("IAPs"), to augment their playing experience. Users can buy in-game currency (coins) and game-play "boosts" through these microtransactions.

37.    Because users can try the app for free, freemium apps acquire new users more rapidly than purchase-to-play apps. Enabling microtransactions at various points throughout game play allows users time to develop app loyalty and engagement before having to pay anything. The continued microtransactions also remove the upper limit of user spending.[6]

38.    Gardenscapes drives users to spend real money to advance in the game. Specifically, Gardenscapes implements three different types of items which players rely upon to advance in the game: stars, hearts and coins.

39.    The stars are necessary to complete certain tasks and to add custom additions to their garden, and are only obtained from playing match-3 levels; hearts are necessary to play the match-3 levels where users can earn the stars and coins; and coins, the in-game currency, are required to buy hearts and in-game power ups ("boosts") which make the match-3 gameplay easier, in turn making it easier to obtain the necessary stars.

40.    Despite being a "free" game, Gardenscapes has generated billions of dollars in revenue since its inception through its in-app purchasing. These purchases

---

[6] Savannah Wei Shi, et al., From Minnows to Whales: An Empirical Study of Purchase Behavior in Freemium Social Games, Int'l J. of Elec. Com. (2015)

**CLASS ACTION COMPLAINT**

typically include coins and "boosts." The most common form of in-app purchases are for bundled groups of these resources, or "packs," generally ranging in price from $0.99 to $99.99 each.

41.    These "packs" and coins are promoted for purchase with real money in the "Garden Shop" feature of the game:



42.    Players engage in "microtransactions" to purchase these in-game valuables that are necessary to progress their account further and advance in the gameplay. Because Defendant offers in-app purchases that advance one's account in proportion to the amount spent and confer advantages that are not reasonably attainable by in-game labor alone, it is most accurately classified as a "Pay to Win" mobile game.

43.    In other words, a player who spends money in the game will advance farther and faster in relation to players who choose not to spend money in the game. The game leverages this by bombarding players with advertisements and invitations to buy "packs" whenever they reach a point in the game where their progress has stalled.

44.    In this way, the game's model is designed to create a sense of urgency around the purchase of in-game resources. Defendant then capitalizes on this sense of

**CLASS ACTION COMPLAINT**

urgency by falsely suggesting that purchases are being made available at a substantial discount.

45.     Defendant's false discounting is only one of the deceitful practices Defendant designed the Gardenscapes game using, known as "dark patterns". "Dark patterns" refer to "a[ny] user interface carefully crafted to trick users into doing things they might not otherwise do," causing players to "engage accidently or unwittingly in monetization activities thereby generating more income for the developer."[7]

46.     Defendant implements a variety of "dark patterns", thereby driving users to succumb to the fraudulent value propositions of its false discount advertisement and purchase purportedly discounted coins and "boosts" with real money to move quickly through the game once they have been hooked.

47.     The FTC considers dark patterns to be "unfair or deceptive" business practices under Section 5 of the FTC Act, and a September 2022 FTC Staff Report titled "Bringing Dark Patters to Light"[8] made clear that "these practices are squarely on the FTC's radar."

48.     Three primary dark patterns practices are utilized by Defendant to deceptively drive users to purchases of its erroneously discounted "packs": first, the implementation of Intermediate Currency to disguise the real money spent; second, a "Grinding" gameplay that initially floods the user with positive feedback loops until they are hooked and then "grinds" them to a halt by making progressing in the game virtually impossible without making purchases; and finally, presenting false discount claims to elicit consumer purchases.

A. *Intermediate Currency*:

---

[7] Dan Fitton, Janet C Read, Creating a Framework to Support the Critical Consideration of Dark Design Aspects in Free-to-Play Apps, Assoc. for Computing Machinery 407 (2019), available at https://dl.acm.org/doi/pdf/10.1145/3311927.3323136
[8] *Id.*

**CLASS ACTION COMPLAINT**

49.     Defendant's dark pattern practices are tactically implemented to foster its use of intermediate currency, a practice of "hiding the real cost by requiring consumers to buy things with virtual currency."[9] Forcing user to pay with in-game virtual currency acts to disguises the true real-world financial cost of user play.

50.     In Gardenscapes, coins are the in-game currency that disguises the real monetary value to buy items for the player (i.e., hearts, stars, "boosts" and other garden upgrade items).

51.     The necessary use of this intermediate currency is propagated by numerous other dark patterns that Defendant designed the game to implement, with the intent to drive users to increased "microtransactions" and in-app purchases, all the while disconnecting the player from the real monetary value they have invested.

## B. *Grinding*

52.     "Grinding" is a form of coerced action dark pattern, in which the free version of a game is so cumbersome and labor-intensive that the player is induced to unlock features with in-app purchases in order to advance, such as purchasing Gardenscapes items that have been advertised as a "discounted" deal.

53.     When a user first starts the game, they are given what seems to be tons of resources; users are stocked with full lives or "hearts", at least one thousand (1000) coins and the match-3 puzzles are easy and quick to complete as the rewards come quickly.

54.     However, as addressed above, Gardenscapes is designed so that as a player progresses deeper into the game and is thereby more invested, tasks and advancement become more difficult and require more time to complete, and nearly impossible

---

[9] FTC Staff Report, *Bringing Dark Patters to Light* (September, 2022) (available at: https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf)

**CLASS ACTION COMPLAINT**

without the purchase of additional coins and "boosts". This leads to the necessity to expend real currency to continue to receive the gratification they previously experienced in the early stages of the game, as these resources are otherwise only available in insufficient amounts through in-game labor alone.

55. In essence, the game is made up of feedback loops, where the output becomes the input for the next iteration of the system. This means that every action made in the game gives the user access to future actions, creating a sense of player progress and motivation.

56. For example, in Gardenscapes, players need stars to complete tasks and advance their garden. Players need to complete the match-3 games to obtain these stars, as well as coins.

57. At the beginning of the game, the time between input and output is immediate and allows the user to obtain stars and complete tasks with relative ease and no expense of intermediate currency. However, as gameplay progresses and a user performs more actions to level up in the game, there comes a point where the difficulty is so cumbersome that a user can no longer advance due to the difficulty, time and in-game commodities necessary to complete the next action. At this point, without making an in-app purchase, the user is at a standstill.

58. Because users have been made so accustomed to short wait times or having to spend the (initially easy to obtain) in-game resources, by the time this standstill occurs (that is, if no additional purchases have already been made) a user is predisposed to make in-app purchases.[10]

59. Defendant builds off the compulsive feedback loops that its game intentionally creates to induce Plaintiffs and other players to spend hundreds, or thousands, of dollars on these falsely discounted in-game items. By implementing a

---

[10] Chris Lewis, Irresistible Apps: Motivational Design Patterns for Apps, Games, and Web-based Communities (1st ed. 2014)

**CLASS ACTION COMPLAINT**

"grinding" dark pattern to hinder advancement of gameplay after users are addicted to the feedback loop, Defendant lures players into spending real money on their arbitrarily priced in-game items..

### C.    Fake Discount Claims

60.    Once a user is hooked on this feedback loop, at peak frustration from being brought to a standstill by Defendant's "grinding" game design, and disillusioned from the real monetary costs obfuscated by Defendant's use of intermediate currency, Defendant capitalizes by presenting users with completely fabricated "discounts" to encourage purchasing behavior.

61.    Defendant follows this model intentionally to foster the dangerous consumer behaviors that ultimately result in more purchases at the expense of its players.

62.    Research into these microtransactions and human behaviors shows a critical link between microtransaction purchases and problem gaming behavior (i.e. behavior associated with gambling addiction) that forms with high frequency purchases.[11] Of note, "[b]oth classical and operant conditioning theories suggest that more frequent events or quicker pay out frequencies could increase the likelihood of problematic microtransaction purchase behavior and problem gambling symptoms through reinforcement."[12]

63.    Defendant uses false reference pricing schemes to increase sales because they know these reference prices influence purchasing decision, as consumer wants bargains. Fake discounting is widely recognized to be a powerful tool in convincing

---

[11] Erin Gibson,et. Al., The relationship between videogame micro-transactions and problem gaming and gambling: A systematic review, 131 Computers in Human Behavior 107219 (2022)
[12] Id.

**CLASS ACTION COMPLAINT**

customers to make purchases, and this issue has been studied repeatedly. As one research study from the Harvard Business School summarized:

> Taken together, evidence from our analysis of observational transaction data and our laboratory experiment suggests that fake prices provide sellers with a powerful tool to enhance demand, but one that may come at the expense of misleading consumers about products' true initial selling prices. Consumers take initial prices as signals of product quality and rate offers as being better deals the higher these initial prices are with respect to present selling prices. Accordingly, fake prices have the highest influence on purchase likelihood for less-informed consumers
> ....
> By definition, a fake price offers a fake discount—a discount that does not represent a decrease from some previous selling price but, rather, the difference between the current selling price and a fake introductory price. There is much existing literature on the impact of discounts on consumer behavior beyond ...[13]

64.    As evidenced below, Gardenscapes in-game shop displays "packs" at an advertised price for which the "pack" is currently offered. Above some of these packs is a percentage discount indicating "65% SALE" or "55% SALE." The advertisements suggest that the pack was formerly offered at the higher price but is now heavily discounted.



[13] D
ava
ffba

65.    However, these packs were in fact never offered at the former price referenced by the discount.

66.    In fact, the "market" price associated with the coins and "boosts" offered in these packs is arbitrarily created by Defendant, where the market price for these in-game items is whatever Defendant determines at the time.

67.    This fact is particularly evident by Defendant's pricing of coins, which routinely fluctuates and is never consistently proportionate to the amount offered for sale, as shown by the below offers on October 14 and October 17, 2024, respectively:





68.     As shown above, Defendant has no consistent scheme in which it values coins (or its "discounted" packs) such that the represented discounts actually correspond to a referenced market price that has been offered for a reasonable period of time.

69.     For example, as of October 14, 2024, 12,000 coins were full-priced at $9.99. Only three days later, on October 17, 2024, 10,000 coins were full-priced at $14.99, a 50% increase in price on a purchase of 17% less coins despite no change in market conditions.

70.     Similarly, as of October 14, 2024, 5,500 coins was full-priced at $4.99. Again, only three days later, on October 17, 2024, 5,000 coins was full-priced at $7.99, a 62% increase in price on a purchase of 9% less coins despite no change in market conditions.

71.     Equally as absurd, as of October 17, 2024, Defendant advertises two offers for 1,000 coins, irrationally priced at either $0.99 or $1.99 for the exact same in-game resources, with neither reflecting a discount in pricing.

72.     Just as clearly indicative of Defendant's fraudulent discounting scheme is the fact that on any given day, the purported discounts do not correspond to Defendant's own arbitrary valuation of its in-app goods.

73.     The below screenshot indicates the "packs" and pricing on October 23, 2024.

**CLASS ACTION COMPLAINT**

74. As displayed, on this day, Defendant valued 1000 coins, at most, at $1.99. The "Botanist Kit" is the lowest full-priced pack, containing 2,000 coins and four "boost" items at a non-discounted sales price of $5.99. At the "market value" Defendant established on this day, 2000 coins at full price would cost $3.98 ($1.99 x 2), with the remaining $2.01 in this "pack" stemming from the full price of the in-game "boosts", valued at roughly $0.50 each ($2.01/4).

75. The "Newbie Set," which is advertised as reflecting a purported "65% sale" discount, includes 1500 coins and three "boost" items, at a sales price of $1.99. Per Defendant's purported full market pricing on this day, 1500 coins would have a market price of $2.98 ($1.99 x 1.5), and the three "boosts" would have a market price of $1.50 ($0.50 x 3), for a total, undiscounted "market price" of $4.48.

76. However, if Defendant's 65% discount were accurately correlated to a purported market value and not instead a simple arbitrary and deceptive marketing tactic, the "Newbie Set" would be offered at $1.56. ($4.48 x 35%). Instead, consumers were misled into spending $0.43 more per purchase than the purported savings that

**CLASS ACTION COMPLAINT**

Defendant advertised, despite the fact that Defendant itself set the price for these exclusive items on this day.

77.    These examples highlight the reality that Defendant's pricing is entirely independent of even its own internal market realities and instead arbitrarily set by Defendant at its own whim. As such, the purported "discount" or "sale" packs have no correlation to a market price ever offered for a consistent period of time, let alone the price offered the *same day*, and are simply advertised as such to induce purchases.

78.    Defendant had actual knowledge that the purported sales pricing on its False Discount Claim "packs" contained false or misleading representations at to their former prices and/or savings for consumers. Defendant designed and promoted these advertisements from 2017 until present day, as the practice of offering these deceptive packs continues.

79.    The price at which a pack is obtained is a material consideration when reasonable players, including Plaintiffs, decide to make purchases. Players seek to maximize the amount of resources obtained from the pack for the lowest cost. Defendant deceives players into taking advantage of alleged discounts so that players believe they are achieving a greater benefit of the bargain on the mistaken belief that they (or other players) may have to pay the substantially-higher non-discounted price for the same number of resources.

80.    As these in-game items are sold exclusively by Defendant within Gardenscapes, Defendant cannot justifiably claim that its pricing reflects discounts from true "market" prices. All of its reference pricing is fabricated. There is no reference to original, regular, retail or former prices. Instead, they are arbitrary and deceptive pricing schemes intended to give consumers the false impressions that they are getting a deal or bargain when in reality they are being swindled.

81.    Plaintiffs and the Class members reasonably relied on the discount pricing when purchasing numerous False Discount Claim "packs". Had Plaintiffs known the

discount pricing was false, Plaintiffs would not have purchased the falsely discounted "packs" that they purchased. Additionally, Plaintiffs would not have spent as much as they did on these deceptive purchases.

82.    If Plaintiffs and the Class members could ever have reasonably realized that the False Discount Claim "packs" were never sold at the original reference price and were not correlated to any real market pricing, such realization would have occurred only after enough game play that Defendants would have already achieved their goal of establishing addictive spending habits through the use of dark patterns designs. Thus, to the extent that Plaintiffs or any of the Class Members continued to make purchases after developing an understanding that the packs were never offered at the indicated original price, this was the calculated and intended result that Defendant sought when engaging in this deceptive and unfair practice in the first place.

83.    As is the intended result of Defendant's dark patterns practices, Plaintiffs continue to be interested in purchasing in-app valuables from Defendant, but will be unable to trust and rely on Defendant's advertising. Absent injunctive relief, Plaintiff cannot know whether Defenendat's purported discounts represent honest prices at which the products are listed for sale, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual and/or disassociated from any market value.

84.    Defendant's use of false discounts, supported by its implemented dark patterns of intermediate currency and "grinding" gameplay, have the goal to increase revenue by addicting users to the game and then tricking users into making numerous in-app purchases at prices in excess of their value.

85.    Regulatory authority expressly deems such practices in the Gardenscapes game as unlawful, unfair, or deceptive acts or practices.

## **FACTS SPECIFIC TO PLAINTIFFS**

**CLASS ACTION COMPLAINT**

*Plaintiff Nguyen' Experience*

86.    Plaintiff David Nguyen played Gardenscapes from approximately 2021 to late-2024 during which he purchased coins and/or in-game "packs" to acquire in-game items and advance in gameplay numerous times, including multiple purchases of "packs" with a purported discount of a 20-65% reduction in price.

87.    Plaintiff Nguyen spent at least hundreds of dollars, in real-world currency, in Gardenscapes during that time.

88.    Throughout his time playing Gardenscapes, Plaintiff Nguyen was never informed of and was thus unaware that the purported discounts offered were false when he made in-game purchases with real-world currency to acquire coins and/or in-game "packs".

89.    Plaintiff Nguyen no longer plays Gardenscapes and wishes that he had never made the purchases that he did and that he had obtained a full refund for them. If, however, Gardenscapes were to change its practices and comply with the law, Plaintiff Nguyen would consider playing Gardenscapes again in the future.

*Plaintiff Scott Sheppard's Experience*

90.    Plaintiff Scott Sheppard played Gardenscapes from approximately early 2020 to early 2024 during which he purchased coins and/or in-game "packs" to acquire in-game items and advance in gameplay numerous times, including multiple purchases of "packs" with a purported discount of a 20-65% reduction in price .

91.    Plaintiff Sheppard spent at least hundreds of dollars, in real-world currency, in Gardenscapes during that time.

92.    Throughout his time playing Gardenscapes, Plaintiff Sheppard was never informed of and was thus unaware that the purported discounts offered were false when he made in-game purchases with real-world currency to acquire coins and/or in-game "packs".

**CLASS ACTION COMPLAINT**

93.    Plaintiff Sheppard no longer plays Gardenscapes and wishes that he had never made the purchases that he did and that he had obtained a full refund for them. If, however, Gardenscapes were to change its practices and comply with the law, Plaintiff Nguyen would consider playing Gardenscapes again in the future.

## CLASS ALLEGATIONS

94.    Plaintiffs brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated defined as follows:

95.    The Classes are defined as follows:

**California Class**: All California residents who, during the applicable limitations period, made in game purchases in Gardenscapes using real-world currency which were advertised as discounted.

**Washington Class**: All Washington residents who, during the applicable limitations period, made in game purchases in Gardenscapes using real-world currency which were advertised as discounted.

96.    **Numerosity.** Upon information and belief, there are hundreds, if not thousands, of Class members, so joinder of all members is impracticable.

97.    **Typicality.** The factual and legal basis of Defendant's liability to Plaintiffs and to the other Class members are the same, resulting in injury to the Plaintiffs and to all of the other members of the Classes. Plaintiffs and the other members of the Classes have suffered harm and damages due to Defendant's unlawful and wrongful conduct.

98.    **Commonality.** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to, the following:

a. Whether Defendant's unfair, deceptive, or unlawful acts or practices of materially misrepresenting discounts while promoting

coins and/or in-game "packs" was unfair or deceptive to a reasonable consumer;

b. Whether Defendant's unfair or deceptive act or practice of using undisclosed "Dark Patterns" to steer players towards making purchases of coins and/or in-game "packs", was unfair or deceptive to a reasonable consumer;

c. Whether Plaintiffs and the other Class members were damaged by Defendant's conduct; and

d. Whether Plaintiffs and the other Class members are entitled to restitution or other relief.

99. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes.

100. **Predominance & Superiority.** Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

101. **Final Declaratory or Injunctive Relief.** Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making injunctive or corresponding declaratory relief appropriate for the Classes as a whole.

## **FIRST CAUSE OF ACTION**

**CLASS ACTION COMPLAINT**

**Unlawful and Unfair Business Practices in Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* (On behalf of Plaintiff Nguyen and the California Class)**

102.    Plaintiff hereby incorporates the above allegations in paragraphs 1 through 98 as though fully set forth herein.

103.    Plaintiff Nguyen and Defendant are "persons" within the meaning of the UCL Cal. Bus. & Prof. Code § 17201.

104.    California's Unfair Competition Law, Business & Professions Code, § 17200, *et seq.* ("UCL") defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue of misleading" advertising. Cal. Bus. Prof. Code § 17200.

105.    A business act of practice is "unlawful" under the UCL if it violates any other law or regulation.

106.    A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

107.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

108.    The UCL, prohibits deceptive acts and practices in the sale of consumer products and services, such as Defendant's Gardenscapes game, including by using fake discounts supported by dark pattern designs to manipulate and frustrate Plaintiff and members of the California Class in order to coerce them into spending real cash for in-game currency and in-game purchases.

109.    Defendant's conduct as alleged herein occurred in the course of trade or commerce.

110.    Defendant has violated the "unlawful" prong under the UCL and have engaged in "unfair, deceptive, untrue or misleading" advertising.

111.    The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. §52(a). FTC Regulations describe false former pricing schemes—similar to Defendants' False Discount Claims in all material respects—as deceptive practices that would violate the FTC Act.

112.    16 C.F.R.§233.1 states:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

113.    California law also prohibits false former pricing schemes. Cal. Bus. & Prof. Code §17501, entitled "Value determinations; Former price advertisements," states:

**CLASS ACTION COMPLAINT**

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement.

114.    As further detailed in the Second Cause of Action below, California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code §1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Id. §(a)(13).

115.    The False Discount Claim "packs" utilized by Defendant in Gardenscapes store violate the unlawful prong of the UCL since they violate 16 C.F.R. §233.1, Cal. Bus. & Prof. Code §17501, and Cal. Civ. Code §§1770(a)(9) and (a)(13).

116.    Defendant's false discounts misrepresent the existence of a sale whereby players can allegedly purchase more items and resources from a pack than they normally could for the same price.

117.    Defendant's use of the False Discount Claim and its various other dark patterns violates 15 U.S.C. §45(a)(1), 15 U.S.C. §52(a), and the FTC Guidelines published in Title 16, Code of Federal Regulations, Section 233.

118.    Defendant also violated and continues to violate Cal. Bus. & Prof. Code §17501, and Cal. Civ. Code §1770, sections (a)(9) and (a)(13), by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months preceding the publication and dissemination of advertisements containing the false former prices.

**CLASS ACTION COMPLAINT**

119.    Defendant's conduct is further "unfair" under the UCL because the user interface in the Gardenscapes game incorporates undisclosed dark pattern design elements such as "Grinding" and "Intermediate Currency," as detailed above. These tactics are deceptive because they are designed to coerce action and manipulate users into making certain decisions in the Gardenscapes game against their own interests, like the purchase of falsely discounts "packs," with real monetary loss to users such as the Plaintiff Nguyen and other members of the California Class.

120.    Defendant's conduct described herein is also "unfair" under the UCL because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, as Defendant doesn't disclose that they use these dark patterns.

121.    Defendant has also violated the "unfair" prong of the UCL by falsely representing that its consumers received a discount from a referenced "original" former price of its False Discount Claim "packs" where, in fact, Defendant set an arbitrary price for the goods contained in these packs and then falsely pretended the packs had ever been offered for sale without their supposed discount and/or that the discounts had some correlation to a prevailing market value.

122.    Defendant has also violated the "unfair" prong of the UCL by engaging in predatory dark pattern practices designed to foster gambling addiction in consumers, in that they: (a) deploy their microtransactions in a way specifically designed to ensnare players  into addictive spending habits; (b) falsely create a sense of urgency, scarcity, and value in order to secure addictive high frequency microtransactions; and (c) use incremental cost step-ups to prevent players from realizing the true cost of the game and how much they have spent, including through its false discount claims. Defendants' goals in engaging in these practices are far outweighed by the harm they cause.

123.    These acts and practices are unfair because they were likely to deceive customers regarding the true monetary costs of their in-app purchases and were likely to cause consumers to falsely believe that Defendant was offering value, discounts, or bargains from the prevailing market value or worth of the products sold that do not, in fact, exist. As a result, purchasers (including Plaintiffs) reasonably understood that they were receiving valuable price reductions on purchases of in-game items. This, in turn, has induced reasonable purchasers to buy such products from Defendant that they would not have otherwise purchase.

124.    The gravity of the harm to Plaintiffs and members of the Classes resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, or motives that Defendant may have had for engaging in such deceptive acts and practices.

125.    Additionally, Defendant has violated the "fraudulent" prong of the UCL because its marketing and advertising materials included false "original" prices for its False Discount Claim "packs." In actuality, the packs never contained the discounts they purported to offer.

126.    Defendant's acts and practices deceived Plaintiffs and the Classes at large. Specifically, Plaintiffs and the Classes relied on these misleading and deceptive representations regarding discounts they expected to receive. Each of these representations and deceptions played a substantial role in Plaintiffs' decisions to purchase the packs, and Plaintiffs would not have done so in the absence of such representations.

127.    Plaintiffs and the Classes never received the benefit of their bargains with Defendant, in that the representation that these items were discounted was false, causing Plaintiff Nguyen and the class to overpay for these items.

128.    Defendant's conduct deceived Plaintiff Nguyen, and is likely to continue to deceive the general public unless enjoined.

**CLASS ACTION COMPLAINT**

129.    Defendant knew or should have known that its representations and/or omissions regarding the in-game purchases were false, deceptive, and misleading.

130.    As a direct and proximate cause of Defendant's deceptive and unfair trade practices, Plaintiff Nguyen and other members of California Class suffered actual damages, including monetary losses.

131.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff Nguyen seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the conduct described above as Defendant's wrongful conduct is ongoing.

132.    Plaintiff Nguyen also seeks rescission and an order requiring Defendant to make full restitution and to disgorge its ill-gotten gains wrongfully obtained from members of the Subclass as permitted by Bus. & Prof. Code § 17203.

133.    Additionally, Plaintiff Nguyen and the California Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## SECOND CAUSE OF ACTION
### Violations of California's False Advertising Law ("FAL")
### (Cal. Bus. & Prof. Code § 17500, *et seq.*)
### (On behalf of Plaintiff Nguyen and the California Class)

134.    Plaintiff hereby incorporates the above allegations in paragraphs 1 through 98 as though fully set forth herein.

135.    The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value, and former price.

136.    Furthermore, the FAL provides that: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged

**CLASS ACTION COMPLAINT**

former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code §17501.

137.    The False Discount Claims "packs" misrepresent the existence of a sale whereby player can allegedly purchase packs at a discounted price, or with an increased percentage of items of resources. In fact, these purported discounts from Defendant have no connection to a prevailing market price advertised within three months of the publication of these advertisements, or for any reasonable period of time.

138.    Through their unfair acts and practices, Defendant has improperly obtained money from Plaintiff Nguyen and the class members. As such, Plaintiff Nguyen request that this Court cause Defendant to restore this money to Plaintiff and all class members, and to prevent Defendant from continuing to violate the FAL, and/or from violating the FAL in the future. Otherwise, Plaintiff Nguyen, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## **THIRD CAUSE OF ACTION**
**Violations of the California Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(On behalf of Plaintiff Nguyen and the California Class)**

139.    Plaintiff hereby incorporates the above allegations in paragraphs 1 through 98 as though fully set forth herein.

140.    Plaintiff Nguyen and the other class members are consumers within the meaning of Cal. Civ. Code §1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§1761(e) and 1770.

141.    Defendant is a "person" within the meaning of Cal. Civ. Code §§1761(c) and 1770, and it sell "goods or services" within the meaning of Cal. Civ. Code §§1761(b) and 1770.

**CLASS ACTION COMPLAINT**

142.    Gardenscapes and the in-app purchases are a "good" or "service" within the meaning of Cal. Civ. Code §§ 1761(a) and (b).

143.    Defendant has Cal. Civ. Code. §1770(a)(13)'s proscription against making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions by misrepresenting the existence of discounts via its False Discount Claim "packs."

144.    Defendant's practices brough injury to Plaintiff Nguyen and the California Class in that they made purchases they would otherwise not have made, and/or made purchases for more than they would have paid.

145.    Plaintiff Nguyen and the other class members suffered actual damages as a direct and proximate result of the Defendants' actions, concealment, and/or omissions in the advertising, marketing, and promotion of its in-app purchases, in violation of the CLRA, as evidenced by the substantial sums Defendants pocketed.

146.    Plaintiff Nguyen, on behalf of himself and the class members, demand judgment against Defendant for injunctive relief and attorney's fees.

**FOURTH CAUSE OF ACTION**
**Violations of the Washington Consumer Protection Act**
**(Wash Rev. Code §§ 19.86.010, *et seq.*)**
**(On behalf of Plaintiff Sheppard and the Washington Class)**

147.    Plaintiff hereby incorporates the above allegations in paragraphs 1 through 98 as though fully set forth herein.

148.    The Washington Consumer Protection Act ("WCPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.010.

149.    Defendant engaged in the omissions or otherwise committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010 as Defendant received payments from Plaintiff Sheppard

**CLASS ACTION COMPLAINT**

and the other members of the Washington Class in Washington state, and designed, managed, and deployed its Gardenscapes game from Washington state.

150. Defendant engaged in acts and practices that had or have the capacity to deceive substantial portions of the public during trade or commerce.

151. Defendant engaged in unfair or deceptive acts or practices through its omissions and conduct described herein in the sale of consumer products and services, such as Defendant's Gardenscapes game and its in-app purchases, and by using undisclosed dark patterns to manipulate and frustrate Plaintiff Sheppard and members of the Washington Class in order to induce them into spending real cash for in-game currency and in-game purchases, including through its False Discount Claim "packs."

152. Defendant's marketing of its False Discount Claim "packs" had and have the capacity to deceive substantial portions of the public because Defendant's advertisements create the illusion of sales and/or discounts with respect to their False Discount Claim "packs."

153. Defendant's deceptive advertising acts and practices significantly affected the public interest as thousands of consumers made purchases based on the misrepresentations in its advertisements.

154. Plaintiff Sheppard and putative Washington Class members acted on Defendant's misrepresentations and/or omissions in that they were unaware that the False Discount Claim "packs" were not actually offered at a reduced price compared to its market value.

155. Defendant knew or should have known that its misrepresentations and/or omissions regarding these in-game purchases were false, unfair, deceptive, or misleading acts or practices.

**CLASS ACTION COMPLAINT**

156.    Defendant's practices brough injury to Plaintiff Sheppard and the Washington Class in that they made purchases they would otherwise not have made, and/or made purchases for more than they would have paid.

157.    Defendant's conduct described herein constitutes an unfair business practice because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

158.    There is direct causation between the deceptive advertising and the injury suffered by Plaintiff Sheppard and the Washington Class because, if not for Defendant's deceptive claims made in the advertisements of the False Discount Claim "packs," Plaintiff and the Washington Class would not have purchased those in-game items and/or would not have paid as much for these in-game items.

159.    Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiff Sheppard and the Washington Class members, and will continue to both damage Plaintiff and the Washington Class members and deceive the public unless enjoined by this Court.

160.    As a direct causal link between Defendant's deceptive or unfair trade acts or practices, Plaintiff Sheppard and the other members of the Washington Class, suffered actual damages, including monetary losses.

161.    Plaintiff seeks to enjoin further unfair and fraudulent acts or practices by Defendant, recover damages, and obtain all other relief allowed under Wash. Rev. Code § 19.86.010.

### FIFTH CAUSE OF ACTION
**Restitution or Unjust Enrichment**
**In the Alternative to Count I, II & IV**
**(On behalf of Plaintiffs and the Classes)**

162.    Plaintiffs hereby incorporate the above allegations in paragraphs 1 through 98 as though fully set forth herein.

**CLASS ACTION COMPLAINT**

163.    Plaintiffs and the other Class members conferred an economic benefit on Defendant through their in-game purchases.

164.    It is inequitable and unjust for Defendant to retain the revenues obtained from in- game purchases of False Discount Claim "packs" made by Plaintiffs and the other Class members when these purchases were induced by misrepresentations regarding the former price of these purchases.

165.    It is also inequitable and unjust for Defendant to retain the revenue obtained from these in-game purchases made by Plaintiffs and the other Class members due to the undisclosed dark patterns incorporated in Defendant's Gardenscapes game that were designed to manipulate players and coerce them into making purchases of in-game coins and/or in-game "packs" that were falsely advertised as discounted and that did not allow Plaintiffs and the other Class members to see the actual value of their purchases.

166.    Accordingly, because Defendant will be unjustly enriched if it is allowed to retain such funds, Defendant must pay restitution to Plaintiffs and the other Class and members in the amount which Defendant was unjustly enriched by each of these in-game purchases.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request, on their own behalf and on behalf of all others similarly situated, the following relief:

1.  For an order certifying this action as a class action, defining the Classes as requested herein, appointing Plaintiffs as class representatives and their counsel as class counsel;

2.  Awarding Plaintiffs all economic, monetary, actual, consequential, compensatory, and punitive damages available at law;

3.  Awarding Plaintiffs' reasonable attorneys' fees, costs, and other litigation expenses;

**CLASS ACTION COMPLAINT**

4. Awarding pre- and post-judgment interest, as allowable by law;

5. For public injunctive relief as the Court may deem proper; and

6. Awarding such further and other relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs request trial by jury of all claims that can be so tried

Dated: November 19, 2024          Respectfully submitted,


By: */s/ Scott Edelsberg*

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

**KALIELGOLD PLLC**
Jeffrey D. Kaliel
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

**KALIELGOLD PLLC**
Sophia Goren Gold
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783
sgold@kalielgold.com


*Counsel for Plaintiffs and the Proposed Classes*

**CLASS ACTION COMPLAINT**